No. 25-10875

IN THE UNITED STATES COURT OF APPEAL
FOR THE ELEVENTH CIRCUIT

HAGOP HADJIAN, individually,
and on behalf of a class of similarly situated individuals,
Plaintiff-Appellant,

v.

MERCEDES-BENZ USA, LLC, a New Jersey Corporation,
Defendant-Appellee.

APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
21-CV-00469

## APPELLANT'S OPENING BRIEF

**CAPSTONE LAW APC**
RYAN H. WU
TYLER ANDERSON
CODY PADGETT
1875 CENTURY PARK EAST, STE. 1000
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 556-4811; FACSIMILE: (310) 943-0396

**BERGER MONTAGUE PC**
RUSSELL D. PAUL
AMEY J. PARK
1818 MARKET STREET, SUITE 3600

TEL.: (215) 875-3000

FAX:  (215) 875-4604

Attorneys for Plaintiff-Appellant
HAGOP HADJIAN
*Additional counsel listed below*

**BLAKE ANDREWS LAW FIRM, LLC**
GARY BLAYLOCK "BLAKE" ANDREWS, JR.
GEORGIA BAR NO. 019375
1831 TIMOTHY DRIVE
ATLANTA, GA 30329
TELEPHONE: (770) 828-6225
FACSIMILE: (866) 828-6882
EMAIL: BLAKE@BLAKEANDREWSLAW.COM

# CERTIFICATE OF INTERESTED ENTITIES OR PERSONS
## (Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1–26.1-3, Appellant Hagop Hadjian, individually, and on behalf of a class of similarly situated individuals, identify all Counsel, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. Anderson, Tyler, *Counsel for Plaintiff-Appellant*
2. Andrews, Jr., Gary Blaylock "Blake", *Counsel for Plaintiff-Appellant*
3. Baca, Elisa Hevia, *Counsel for Defendant-Appellee*
4. Berger Montague, PC - *Counsel for Plaintiff-Appellant*
5. Capstone Law APC - *Counsel for Plaintiff-Appellant*
6. Drake, E. Michelle - *Counsel for Plaintiff-Appellant*
7. Gertner, Abigail - *Counsel for Plaintiff-Appellant*
8. Hadjian, Hagop - *Plaintiff-Appellant*
9. Hartung, Roland Oliver, *Counsel for Defendant-Appellee*
10. Kiyam, Nathan, *Counsel for Plaintiff-Appellant*
11. Knapp, Eric Jonathan, *Counsel for Defendant-Appellee*
12. Lesser, Natalie, *Counsel for Plaintiff-Appellant*
13. Malone, S. Wade, *Counsel for Defendant-Appellee*

1

14. Mecedes-Benz Capital Nederland B.V.

15. Mercedes-Benz Group AG

16. Mercedes-Benz North America Corporation

17. Mercedes-Benz USA, LLC, *Defendant-Appellee*

18. Nelson Mullins Riley & Scarborough LLP, *Counsel for Defendant-Appellee*

19. Obi, Shawn R., *Counsel for Defendant-Appellee*

20. Padgett, Cody, *Counsel for Plaintiff-Appellant*

21. Park, Amey J., *Counsel for Plaintiff-Appellant*

22. Paul, Russell D., *Counsel for Plaintiff-Appellant*

23. Ross, Honorable Eleanor L., *United States District Judge, Northern District of Georgia*

24. Winston & Strawn LLP, *Counsel for Defendant-Appellee*

25. Wu, Ryan H., *Counsel for Plaintiff-Appellant*

26. Yoshino, Troy M., *Counsel for Defendant-Appellee*

Dated: June 5, 2025                    Respectfully submitted,

                                       Capstone Law APC


                              By: _____
                                       Ryan H. Wu
                                       Tyler Anderson
                                       Attorneys for Plaintiff-Appellant
                                       HAGOP HADJIAN

2

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument in this case. The issue raised in this appeal is relatively straightforward — did the district court correctly decide at summary judgment that, as a matter of law, Appellant knew or should have known his vehicle was defective at the time of purchase rather than 241 days later when the defect symptoms arose?

Here, the District Court erred by directly misreading the record — holding that Appellant did not testify conclusively that he did not know of the defect at the time of purchase. In fact, Appellant stated so directly and also provided an extensive narrative regarding how Respondent concealed the defect from him at purchase and how he discovered the defect 241 days later. Such an obvious oversight could have been easily corrected by the district court at oral argument had it occurred.

Appellant hopes oral argument will give him the chance to clarify any issues the Court of Appeals may have about the record and allow the Court of Appeals to reach a more accurate decision as well as respond to any questions.

3

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... 6

JURISDICTIONAL STATEMENT ............................................... 8

STATEMENT OF ISSUES PRESENTED ...................................... 8

STATEMENT OF THE CASE ....................................................... 8

I.    Factual Background ........................................................... 10

      A.   MB Sells Vehicles with the Inlet Defect. ................... 10

      B.   Appellant Purchases an MBUSA Class Vehicle and Later Discovers the Inlet Defect upon Experiencing the Defect Symptoms. .................. 13

II.    Procedural History................................................................ 15

      A.   Pleadings................................................................... 15

      B.   Motion for Class Certification and Cross-Motion for Summary Judgment ............................... 16

STANDARD OF REVIEW ........................................................... 18

SUMMARY OF ARGUMENT ...................................................... 18

ARGUMENT................................................................................ 20

I.    The Common Law and Statutory Doctrines of Delayed Accrual Apply to Appellants' Claims and Therefore the Claims Were Filed Within the Statute of Limitations. ...................................................... 20

      A.   The Discovery of the Inlet Defect on March 28, 2017 Prevented the Claim from Accruing Until that Date under General California Statute of Limitaions Principles. ............................. 22

      B.   The Discovery of the Inlet Defect on March 28, 2017 Prevented the Claim from Accruing Until that Date under California Warranty Law.......................................................................... 25

II.    The District Court Erroneously Concluded that

No Triable Issue of Fact Existed with Regard to
the Statute of Limitations Issue.......................................... 27

CONCLUSION.............................................................................. 39

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*, 477 US 242 (1986) ...................... 18, 28

*Blue v. Lopez*, 901 F.3d 1352 (11th Cir. 2018) ................................ 18, 28

*Gale v. First Franklin Loan Services*, 701 F.3d 1240 (9th Cir. 2012) ................................................................................................ 27

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256 (11th Cir. 2004) .................................................................................................. 36

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) .................................... 22

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848 (9th Cir. 2002) .................................................................. 20

*Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118 (11th Cir. 2021) ............................................................................................ 28

*Krieger v. Nick Alexander Imports, Inc.*, 285 Cal. Rptr. 717 (Ct. App. 1991) ................................................................................. 25

*Landa v. FCA US LLC*, 2021 WL 1565800 (C.D. Cal. Mar. 23, 2021) ............................................................................................. 26

*Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125 (1991) .............. 21

*McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151 (1999) .................................................................................................. 22

*McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009) .................................................................................................. 37

*Migliori v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976 (C.D. Cal. 2000) ............................................................................................ 22

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999) .................................... 22

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) .................................................................................................. 36

6

*Renasant Bank, Inc. v. Smithgall*, 2017 WL 11633923 (N.D. Ga. Dec. 21, 2017) .............................................................. 28

*Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................................................................... 22

*Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012) .......................................................................... 18

*Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir.2012) ..................................................................... 36, 37

*United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487 (9th Cir. 1990) .......................................... 38

*United States v. Stein*, 881 F.3d 853 (11th Cir. 2018) ........................... 38

*Zuehlsdorf v. FCA US LLC*, 2023 WL 385175 (9th Cir. Jan. 25, 2023) .............................................................. 20, 24, 26

## STATUTES

Cal. Bus. and Prof. Code §§ 17200 *et seq* .................................. 16, 20, 21

Cal. Civ. Code § 1783 ............................................................. 20

Cal. Com. Code § 2725 .......................................................... 21

Cal. Com. Code § 2725(2) ................................................... 25, 26

Californa Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ......................................................... 15

California Civil Code §§ 1791 *et seq.*, ............................................. 16

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2303 *et seq.* ................... 16

Fed. R. Civ. P. 56 ............................................................. 18, 36

## JURISDICTIONAL STATEMENT

Appellant Hagop Hadjian filed this action in the United States District Court for the Northern District of Georgia on January 29, 2021. Doc. 1. On February 25, 2025, the district court granted summary judgment in favor of Respondent Mercedes-Benz USA, LLC ("MBUSA" or "Respondent") on each of Appellant's claims, which completely disposed of the case, and judgment was formally entered on February 26, 2025. Doc. 164; Doc. 165. Thus, this court has jurisdiction under 28 U.S.C. section 1291. Appellant gave timely notice of this appeal on March 18, 2025. Doc. 168.

## STATEMENT OF ISSUES PRESENTED

**Issue No. 1:** Did the district court correctly decide that, as a matter of undisputed material fact, Appellant knew or should have known about his vehicle defect at time of purchase, rather than at the time the defect symptoms arose, and thus did not file his claim within the statute of limitations period?

## STATEMENT OF THE CASE

This case concerns Mercedes-Benz vehicles that are equipped with front bumper covers and air inlets ("Class Vehicles") that allow

rocks, pebbles and other road debris to enter and damage the vehicles' aluminum radiators, causing cooling system leaks, insufficient coolant system pressure, and overheating, which causes head warping and ultimately catastrophic engine failure (the "Inlet Defect").

In granting summary judgment, the District Court improperly adjudicated a factually disputed issue, holding that because Appellant knew, or should have known, that his vehicle was defective at the time of purchase, the California specific delayed claim accrual rules did not extend the statute of limitations deadline and thus the statute of limitations precluded Appellant from bringing suit. Doc. 164 at 8–10.

The District Court's decision is clearly erroneous. On summary judgment, facts and reasonable inferences should be construed in favor of the non-moving party. However, despite overwhelming evidence of disputed facts—including a lengthy explanation regarding how Respondent assured Appellant that the vehicle would function without defect at and before the time of purchase, Appellant's express inability to discover the defect at the time of purchase, and Appellant's subsequent discovery of the defect when the defect symptoms arose—the District Court ruled that Appellant acted unreasonably by failing

9

to notice the defect at first sight because the defect is partially caused by gaps in the front grill[1] on the vehicle and the grill is visible to the eye when looking at the front of the vehicle. Doc. 164 at 8–10. The District Court's conclusion, that a reasonable consumer would notice and conclude that the gaps in the grill could damage engine parts, is not supported by the record and must be reversed.

## I.   Factual Background

### A.   MB Sells Vehicles with the Inlet Defect.

MBUSA is a New Jersey company that designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles nationwide and in California, including the Class Vehicles: Mercedes-Benz vehicle years and models 2016–23 AMG C63; 2016–23 AMG E63; 2016–21 AMG S63; 2016–19 AMG SL63; 2022–23 AMG SL63; 2017–23 AMG SL65; 2018–21 AMG GLC63; 2016–23 AMG GLE63; 2016–23 AMG GLS63. Doc. 126-2 at 9.

The bumper covers and air inlets installed in each of these vehicle models, which are intended to protect the Class Vehicles'

---

[1] Although "grille" is the preferred spelling for the car part, the record below largely uses the spelling "grill," which has been adopted here for consistency.

radiators from damage, were defectively designed. The defective design provides inadequate and sometimes non-existent protection to the subject radiators, resulting in physical damage to radiators, which in turn causes either "immediate and catastrophic" failure or "progressively reduced cooling efficiency, causing long term system damage, diminished service life, reduced system performance and reduced engine performance." Doc. 126-2 at 6; Doc. 126-3 at 2–9. Ultimately, the Inlet Defect can cause damage to the radiator such that the radiator starts leaking and may cause abrupt, immediate and catastrophic results. Doc. 134-5 at Tr. 45:5–9, 85:2–11. The Inlet Defect can also cause damage to the air flow of the radiator which can be blocked by damage as a result of the Inlet Defect. Doc. 134-5 at Tr. 45:10–13. The fins of the intercoolers can become bent and obstruct the airflow through the intercoolers, as was found on the Plaintiff's vehicle. Doc. 134-5 at Tr. 91:19–21.

Nearly all motor vehicles utilize radiators for vehicle system cooling. Modern vehicles incorporate up to seven-plus different radiators for cooling of different vehicle systems. Doc. 126-2 at 7–9. Modern radiators are constructed from aluminum for optimum heat

transfer. Doc. 126-2 at 7–9. To maximize heat transfer, the surface area is maximized by installing fins between the radiator tubes where fluid to be cooled is circulating. Doc. 126-2 at 7–9. The thinnest possible fins are utilized to maximize the number of fins, thus maximizing the exposed surface area, heat transfer, and cooling efficiency. Doc. 126-2 at 7–9. When these fins are bent, they restrict air flow and thus reduce the cooling efficiency and cooling capacity of the radiator resulting in premature wear, reduced performance or, in some cases, catastrophic failure of automotive components and systems. Doc. 126-2 at 7–9.

The Class Vehicles all share the same defective design: inadequate bumper and inlet covers to protect their radiators. Doc. 126-2 at 9–18; Doc. 126-3 at 7. MBUSA implicitly recognizes this commonality by confirming that Mercedes-Benz Service Campaign 20904000 was issued to retrofit protective grills on certain class vehicles. Doc. 126-4; Doc. 126-5 at Tr. 63:13–17. Thus, there is no dispute that the Defect is inherent and present at the time of purchase or lease, and MBUSA's deceptive conduct affected all Class Members in the same way.

Most Class Vehicles have no protection in front of the lower radiators and select models are equipped with inadequate grills. These grills have shallow, large openings. For example, a typical Mercedes model grill will allow debris as large as 20mm in diameter (3/4") to pass through. Doc. 126-3 at 7–9.

The current design of the subject Class Vehicles offers inadequate protection from debris. Indeed, several of the subject Class Vehicles lack any grill or radiator covering whatsoever, resulting in elevated vulnerability by allowing larger debris to pass through. Doc. 126-3 at 7–9. MBUSA failed to incorporate appropriate radiator protection in their design, resulting in damage to the radiators during intended use of the vehicle. Doc. 126-3 at 7–9.

### B. Appellant Purchases an MBUSA Class Vehicle and Later Discovers the Inlet Defect upon Experiencing the Defect Symptoms.

Appellant Hagop Hadjian purchased a model year 2016 Mercedes-Benz C63 AMG on July 31, 2016 at Mercedes-Benz of Encino in California. Doc. 134-3 at Tr. 34:19–25. Appellant visited the dealership approximately six months prior to his purchase and looked at the 2016 AMG C63S and other cars, spoke with employees of the

13

dealership, and test drove the vehicles. Doc. 134-3 at Tr. 36:4–37:8.
Each of these interactions with Respondent and Respondent's agents
prior to purchase indicated to Appellant that a 2016 Mercedes-Benz
C63 AMG would function normally if purchased—that is, it would not
have defects like the Inlet Defect. Doc. 134-3 at Tr. 34:19–37:8; Doc.
143-10 at ¶¶ 9–10; Doc. 143-2 at P52.

Based in part on these interactions, Appellant decided to
purchase his vehicle. Doc. 134-3 at Tr. 34:19–37:8; Doc. 143-10 at ¶¶
9–10.  At the time of purchase, Appellant again had interactions with
the Mercedes-Benz salesperson, reviewed the papers and documents
describing the features of the 2016 AMG C63S, and purchased the
vehicle based on the representations that the vehicle would function as
described. Doc. 134-3 at Tr. 39:22–40:3. At no time prior to or during
purchase did any of Respondent's agents disclose the defect to
Appellant and he was not aware of the Inlet Defect from any other
source. Doc. 143-10 at ¶¶ 9–10. Appellant was not aware of, and had
no way of knowing of, the Inlet Defect prior to March 28, 2017. Doc.
143-10 at ¶¶ 9–10.

On March 28, 2017, Appellant's brother discovered what turned

14

out to be a symptom of the Inlet Defect as it arose — a coolant leak from the bottom of the vehicle while it was parked at home. Doc. 134-3 at Tr. 70:1–3; Doc. 143-10 at ¶¶ 11–17. That same day, Appellant's brother drove the vehicle to Mercedes-Benz of Encino to have the vehicle serviced. Doc. 134-3 at Tr. 73:9–14; Doc. 143-10 at ¶¶ 11–17. Mercedes-Benz of Encino found the intercooler was low for the circuit turbo system that was caused by a tiny hole from road material that had entered through the Inlet Defect. Doc. 134-3 at Tr. 73:11–21, 79:1– 7; Doc. 143-10 at ¶¶ 11–17; Doc. 143-11. The Mercedes-Benz dealership refused to repair the defect symptom. Doc. 134-3 at Tr. 73:11–21, 79:1–7; Doc. 143-10 at ¶¶ 11–17; Doc. 143-11. Eventually, Keyes European in Van Nuys, California replaced the low circuit coolant radiator under good will, charging Appellant only for labor. Doc. 134-3 at Tr. 90:24–91:2, 91:17–23; Doc. 143-10 at ¶¶ 11–17.

## II.    Procedural History

### A.    Pleadings

Appellant filed this suit on January 29, 2021 alleging causes of action under the California Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*, breach of the Song-Beverly Act

implied warranty of merchantability, California Civil Code §§ 1791 *et seq.*, breach of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2303 *et seq.*, unjust enrichment, and California Business and Professions Code §§ 17200 *et seq.* Doc. 1. On April 15, 2021, Appellant amended his complaint to allege class allegations. Doc. 41. Respondent then filed a motion to dismiss for failure to state a claim, Doc. 47, and the District Court granted the motion in part on March 31, 2022 and dismissed the Magnusson-Moss and unjust enrichment claims. Doc. 60 at 42.

After conducting discovery, Appellant moved to file a second amended complaint on March 16, 2023, which the District Court denied on January 18, 2024. Doc. 104; Doc. 121.

### B.    Motion for Class Certification and Cross-Motion for Summary Judgment

Thereafter, Appellant moved for class certification and, in a competing motion, Respondent moved for summary judgment, including based on the statute of limitations at issue. Doc. 125; Doc. 134. Appellant opposed, conceding the dismissal of his CLRA claim which was filed beyond the statute of limitations but arguing that the delayed discovery of the defect prolonged the accrual date for filing the remaining claims such that the statute of limitations did not prohibit

16

the suit. Doc. 143 at 13–18.

On February 25, 2025, the District Court granted Respondent's summary judgment on statute of limitations grounds, ruling that Appellant either knew or should have known his car was defective at the time of purchase by exercising "reasonable diligence," including by paying attention during the test drive. Doc. 164 at 8. In particular, because the defect is caused in part by the size of the openings in the front grill, and because anyone can see the front grill openings by simply looking at the front of the car, Appellant should have reasonably discovered the defect when he first looked at the vehicle despite Respondent's representations that the vehicle would function as intended. Doc. 164 at 9. And, the District Court held, Plaintiff failed to rebut the presumption that a preliminary visual inspection would have put him on notice of the defect by failing to directly testify that it did not. Doc. 164 at 10.

The District Court apparently overlooked Appellant's declaration, submitted as Exhibit H in opposition to the Motion for Summary Judgment, that stated specifically that he did not and could not have discovered the Inlet Defect prior to discovering the defect

17

symptoms. Doc. 143-10 at ¶¶ 9–10.

After reaching this ruling, the District Court entered judgment on February 26, 2025 and Appellant noticed the instant appeal on March 18, 2025. Doc. 165; Doc. 168.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).

In addition to viewing the evidence in the light most favorable to the non-moving party, the court is required to draw all justifiable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

## SUMMARY OF ARGUMENT

The District Court's decision here is plainly erroneous. On summary judgment, facts and reasonable inferences should be

18

construed in favor of the non-moving party. However, despite direct contrary evidence, the District Court ruled that Appellant acted unreasonably by failing to notice at first sight that the front grill of the vehicle had gaps and that those gaps would cause the Inlet Defect. The District Court's reasoning — that, as a matter of law, no reasonable consumer would fail to identify the defect in the vehicle at first sight, is obviously flawed. Foremost, it discounts the real experiences of many thousands of people who did in fact purchase these model year vehicles (including Appellant) and certainly would not have if they had known the vehicle was defective, sometimes catastrophically. Moreover, even if the District Court's factual determination were credible (it is not) the summary judgment standard simply does not allow the District Court to determine disputed facts, including the reasonableness of Appellant's inability to identify the defect on first sight.

For each of these reasons, the District Court's order must be reversed.

## ARGUMENT

### I. The Common Law and Statutory Doctrines of Delayed Accrual Apply to Appellants' Claims and Therefore the Claims Were Filed Within the Statute of Limitations.

In federal court, California state law claims typically apply state statute of limitations principles unless federal law conflicts. *See Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (applying California statute of limitations rules to a Bus. and Prof. Code § 17200 claim); *Zuehlsdorf v. FCA US LLC*, 2023 WL 385175, at *2 (9th Cir. Jan. 25, 2023) (applying California tolling rules to a state automotive warranty claim). This is based on the policy of deferring to "the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Hardin v. Straub*, 490 U.S. 536, 538 (1989).

The California statute of limitations for each of the claims at issue on this appeal is four years. Cal. Bus. & Prof. Code § 17208 (UCL); Cal. Com. Code § 2725 (Song-Beverly Act and common law warranty claims). The only remaining claim with a three-year statute of limitations, that Consumer Legal Remedies Act claim, was

20

voluntarily dismissed by Appellant. Cal. Civ. Code § 1783; Doc. 164 at 4.

Because Appellant purchased his vehicle on July 31, 2016, Doc. 134-3 at Tr. 34:19–25, but did not file this suit until January 29, 2021, Doc. 1, the applicable four-year statutes of limitations would generally bar Appellant's claim but for an intervening legal doctrine. *Mangini v. Aerojet-Gen. Corp.,* 230 Cal. App. 3d 1125, 1150 (1991) (noting this "traditional rule"); Cal. Bus. & Prof. Code § 17208; Cal. Com. Code § 2725.[2] Here, however, Appellant was not aware of the Inlet Defect on his vehicle until March 28, 2017 when Appellant's brother discovered a leaking from the bottom of the vehicle. Doc. 134-3 at Tr. 70:1-3. That same day, Appellant's brother drove the vehicle to Mercedes-Benz of Encino to have the vehicle serviced and was told about damage caused by the Inlet Defect. Doc. 134-3 at Tr. 73:9–79:7.

Here, two related doctrines of accrual prevented the statute of limitations from running until Appellant discovered the defect.

---

[2] But note that the implied warranty claims would not even accrue under a straightforward application of the statute of limitations statute as explained below.

###### A.    The Discovery of the Inlet Defect on March 28, 2017 Prevented the Claim from Accruing Until that Date under General California Statute of Limitations Principles.

Under general statute of limitations principles, California's delayed discovery rule "postpones accrual of a claim until 'plaintiff discovers, or has reason to discover, the cause of action.'" *Migliori v. Boeing N. Am., Inc.,* 114 F. Supp. 2d 976, 982 (C.D. Cal. 2000) (quoting *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 397 (1999)). To invoke application of this rule, plaintiff must establish "(a) lack of knowledge; (b) lack of a means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); [and] (c) how and when he did actually discover the [claim]." *Id.* (quoting *McKelvey v. Boeing N. Am., Inc.,* 74 Cal. App. 4th 151, 160 (1999). "The statute begins to run once [plaintiff] is put on inquiry notice, when the circumstances would lead a reasonable person to suspect wrongdoing." *Ries v. Arizona Beverages USA, LLC,* 287 F.R.D. 523, 534 (N.D. Cal. 2012) (citing *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1110 (1988)).

Here, Appellant readily satisfies all three elements. As Appellant explained with regard to elements one and two, Appellant

22

conducted substantial pre-purchase research on his vehicle, including reading extensive materials put forth by Respondent, all of which informed him that his vehicle would not be defective at the time of purchase. Doc. 134-3 at Tr. 38:2–10, 168:4–22; Doc. 143-10 at ¶¶ 3–10. For example, Appellant visited the dealership where he purchased the vehicle six months prior to when he purchased the Vehicle (Doc. 134-3 at Tr. 36:4–37:4, 37:15–17), spoke with dealership employees about the vehicle at that visit and at the time of purchase (Doc. 134-3 at 36:6–37:8; 39:22–40:3), test drove the vehicle (Doc. 134-3 at 36:21–37:8), and reviewed papers and documents describing the vehicle's features prior to purchasing it, including vehicle specifications and an owner's manual. Doc. 134-3 at 38:2–10, 168:4–22; Doc. 143-10 at ¶¶ 3–10. All of these activities supported Appellant's belief that his vehicle was not defective. Doc. 143-10 at ¶¶ 3–10. Indeed, Appellant directly testified that: "At no time did any Mercedes dealership employee inform or disclose to me the existence of the Defect in my car and I was not aware of the Defect from any other source. If, before I purchased the vehicle, Mercedes had disclosed to me the nature of this Defect, in its sales and/or promotional materials or in any other materials that were

23

presented or made available to me, I would not have purchased my 2016 AMG C63S." Doc. 143-10 at ¶¶ 9–10.

The third element for delayed accrual is also satisfied here: Rather than discover the defect at time of purchase, Appellant actually discovered the defect on March 27, 2017 when his brother noticed a problem with the vehicle and took it to the Mercedes-Benz dealership in Encino, which diagnosed the defect. Doc. 134-3 at 73:9–14; 73:11–21, 79:1–7; Doc. 143-10 at ¶¶ 11–17; Doc. 143-11.

As the report prepared by the mechanics at the Mercedes-Benz dealership explained, the coolant leak identified was caused by a tiny hole from road material that had entered through the Inlet Defect. Doc. 143-11; Doc. 134-3 at 73:11–21, 79:1–7; Doc. 143-10 at ¶ 14.

Recently, the Ninth Circuit, interpreting California statute of limitations law, rejected a car manufacturer's argument at summary judgment that a purchaser was put on notice of a defect at time of purchase, noting that "a rational jury could find that [the purchaser] was not on inquiry notice at the time of purchase [when he reasonably believed] the car was [not] defective." _Zuehlsdorf_, 2023 WL 385175, at *2. This direct application of the law in question to an automotive

24

defect case demonstrates why Appellant is readily entitled to timely plead his claims under the delayed discovery rule.

### B.    The Discovery of the Inlet Defect on March 28, 2017 Prevented the Claim from Accruing Until that Date under California Warranty Law.

While the general delayed discovery rule described above affects all of Appellant's claims equally, Appellant's warranty claims have an additional statutory reason for the claim accruing at the time of discovery, rather than purchase. California Commercial Code section 2725(2) provides that:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal. Com. Code § 2725(2) (emphasis added). Thus, it is black letter California statute of limitations law that warranty claims that "extend to future performance" accrue at the time the breach of warranty is discovered, not at the time of sale. Cal. Com. Code § 2725(2).

Here, Appellant's vehicle is subject to a four-year, 50,000-mile

25

new vehicle warranty which clearly extended beyond the time of purchase. *Compare* Doc. 134-4 at 8 (providing warranty), *with Zuehlsdorf*, 2023 WL 385175, at *2 ((interpreting warranty) (citing *Krieger v. Nick Alexander Imports, Inc.*, 285 Cal. Rptr. 717, 724 (Ct. App. 1991)); *see also Landa v. FCA US LLC*, 2021 WL 1565800, at *4–5 (C.D. Cal. Mar. 23, 2021) (agreeing that existence of express warranty explicitly extended to future performance of goods, thus tolling the statute of limitations).

As explained above, the date of discovery, and thus warranty claim accrual, was March 28, 2017, when Mercedes-Benz of Encino mechanics discovered the coolant leak was caused by intercooler damage consisting of "a tinny [sic] hole from road some material", recommended replacement of the radiator, and refused to cover the repair under warranty. Doc. 134-3 at Tr. 73:11–21, 79:1–7; Doc. 143-10 at ¶¶ 11–17; Doc. 143-11. Thus, March 28, 2017 was the earliest that Appellant's implied warranty claim accrued. *Compare Zuehlsdorf*, 2023 WL 385175, at *2; *with* Doc. 143-10 at ¶¶ 11–17.

As the Ninth Circuit recently explained in an automotive defect case adjudicated on summary judgment applying Section 2725(2), "[a]s

for the implied warranty claim, 'where a warranty explicitly extends to future performance of the goods . . . the cause of action accrues when the breach is or should have been discovered[],'" not at the time of purchase. *Zuehlsdorf,* 2023 WL 385175, at *2 (quoting Cal. Com. Code § 2725(2)). The warranty claim accrual provisions of Section 2725(2) apply even where a plaintiff "sues under the implied warranty of merchantability rather than [the manufacturer's] express warranty, the existence of that express warranty triggers the discovery rule in § 2725(2), which applies when 'a warranty' extends to future performance of the goods, not when the allegedly breached warranty does so." *Id.* (quoting and citing *Gale v. First Franklin Loan Services,* 701 F.3d 1240, 1246 (9th Cir. 2012)).

Here, as a matter of statute, Appellant's warranty claims did not accrue until March 28, 2017 and thus the statute of limitations is satisfied as to those claims.

## II. The District Court Erroneously Concluded that No Triable Issue of Fact Existed with Regard to the Statute of Limitations Issue.

All the above illustrates why a trier of fact should straightforwardly conclude that the statute of limitations tolled, or did

27

not accrue, until March 28, 2017. However, in its evaluation, the district court need not weigh the evidence presented by either side; rather, at summary judgment, the district court's duty is to determine whether any triable issue of fact existed with regard to the statute of limitations issue. *Renasant Bank, Inc. v. Smithgall*, 2017 WL 11633923, at *5 (N.D. Ga. Dec. 21, 2017) ("It is not the Court's place to make such credibility determinations.").

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 248 (1986); *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). As this Court recently explained: "If we are to properly perform the summary judgment inquiry, . . . we must accept, for now [plaintiff's version of the facts.] Because the District Court weighed testimony and made credibility determinations . . . We must therefore vacate the District Court's summary judgment order[.]" *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1128 (11th Cir. 2021).

Here, Appellant offered substantial evidence regarding his initial investigation into the vehicle which led him to believe there was no defect combined with his later discovery of the Inlet Defect 241 days after purchase. Doc. 134-3 at Tr. 70:1–79: 7; Doc. 143-10 at ¶¶ 11–17; Doc. 143-11.

In particular, for at least six months prior to purchasing his vehicle Appellant reviewed materials provided by Respondent and spoke with agents for Respondent who assured Appellant that his vehicle would function as advertised — that is, without any defects such as the Inlet Defect. Doc. 134-3 at 34:19–25, 36:4–37:8, 39:22–40:3. As Appellant summarized those interactions: "At no time did any Mercedes dealership employee inform or disclose to me the existence of the Defect in my car and I was not aware of the Defect from any other source." Doc. 143-10 at ¶ 9.[3] Appellant was not aware of, and had no way of knowing of, the Inlet Defect prior to March 28, 2017. Doc. 143-10 at ¶¶ 9–10.

Under these facts, a rational jury should find that, before that

---

[3] The Separate Statement contained a typo that referenced the paragraph as 16 rather than 9.

29

date, Appellant had no reason to reasonably suspect or investigate the insufficiency of the vehicle's grill protection for his vehicle's radiator. At a minimum, Appellant's submitted evidence created a genuine dispute of material facts that requires a denial of summary judgment.

Instead, the District Court attempted to weigh the evidence, in a counter-intuitive way. The District Court found that "there is no explanation from Appellant for why, having observed the openings on the grill on the MB C63 in the course of his use of the car after having bought it, he believed that the grill would adequately protect his engine components and, thus, did not suspect a defect." Doc. 165 at 10–11. Based on this terse finding, the District Court concluded "under the undisputed facts, the discovery rule does not apply to toll the accrual of Plaintiff's Song-Beverly and ULC Claims until Plaintiff discovered the Inlet Defect on March 27, 2017. Rather, Plaintiff failed to show a material dispute as to the existence of inquiry notice from around the time of sale." Doc. 165 at 11.

This finding is erroneous for several reasons. First, as discussed, the District Court overlooked Appellant's submitted evidence stating that he did not and could not have discovered the Inlet Defect. The

30

District Court did not grapple with Appellant's evidence at all. Under the summary judgment standard, the District Court should have concluded that Appellant's evidence — whatever the District Court's own views happen to be — is sufficient to establish a genuine dispute of material fact regarding whether the Inlet Defect was discoverable at the time of purchase.

Second, the District Court appears to have supplanted the evidence in the record with its own views as to what Appellant should have discovered. Not only is this incorrect, but the District Court's reasoning is also deeply flawed, making several logical leaps that do not comport with the evidence or an intuitive understanding of the rational consumer. By imputing that Appellant should have known about the Inlet Defect through a visual inspection of the grill, the District Court is making the following assumptions: that the average consumer would (1) place importance on the design of a vehicle's front grill; (2) take note that the gaps in the front grill are unusually large; (3) intuitively understand that debris can penetrate the gaps in the front grill; (4) determine that the vehicle did not have a protective covering shielding the internal motor parts from debris that penetrate

31

the front grill; (5) know that an important component, such as a radiator, sits directly behind the front grill; and (6) understand that debris that penetrate the front grill can damage a key component, like the radiator.

Nothing in the record suggests that the average consumer would be expected even take the design of a front grill into account in making a vehicle purchase, let alone support that a consumer could be expected to reasonably conclude, based on viewing the grill of the Subject Vehicle, that the large gaps in the grill can result in damage to fragile radiator fins. There are no consumer surveys or conjoint analysis in the record at all, and so there is no competent evidence regarding whether a front grill generally affects a rational consumer's preferences. Given this dearth of evidence regarding consumer behavior, there is also no evidence to support the District Court's conclusion that an ordinary consumer like Appellant can be expected to have figured out, for himself and based on an initial visual inspection, that the gaps in the front grill could cause damage to internal engine parts.

Nor is there any reason to presume that, even if a consumer

32

were to notice that the size of grill openings is unusually large, that the consumer would jump to the conclusion that the grill would allow debris to damage engine parts like radiator fins. The evidence in the record belies the District Court's assumptions. For example, in its Opposition to the Motion for Summary Judgment, Appellant cited to the expert report of Murat Okçuoğlu. Doc. 143 at 12. Mr. Okçuoğlu examined the grills and concluded that both the aperture size and angle of the grill, and the placement of the radiator, without any protective covering or mesh, caused the delicate fins of the radiator to be damaged from incoming debris. Doc. 126-3 at 7–8. This defect did not appear to be obvious, and in fact, MBUSA denies that the defect exists at all. Doc. 134-1 at 14. Nothing in the evidence suggests that the Inlet Defect is something that is so obvious on its face that an ordinary consumer would be expected to know it upon a visual inspection of the grill.

The District Court's flawed approach extends to its demand that Appellant should have to explain why, "having observed the openings on the grill on the MB C63 in the course of his use of the car after having bought it, he believed that the grill would adequately protect

his engine components and, thus, did not suspect a defect." Doc. 165 at 11. The District Court cites to an out-of-context statement from Plaintiff's damages expert, who "testified that he had formed his understanding of the defect (i.e., "debris can get into the . . . vehicle and, to the extent that there is something like a radiator to be damaged, it could be damaged") based on, among other things, "various pictures that [he'd] seen and how the car is designed." Doc. 165 at 9 [Citing Dep. of Steven Boyles, Doc. 134-6 at Tr. 39:24–40:10]. But Mr. Boyles, testifying regarding damages (not the existence of the defect), formed his opinion after the vehicle's radiator malfunctioned and an engineering expert had already identified the issue. Doc. 126-10 at 5–6. As Mr. Boyles testified, he based his understanding of the existence of the defect on this other evidence when preparing his report on damages. Doc. 126-10 at 5–8. Regardless, hindsight is 20/20. It is one thing to identify the culprit after the problem manifests; it is another to be expected to divine the problem before it happens.

Indeed, not only is there no evidence to support the District Court's supposition that an average consumer of a motor vehicle would make a purchase based on this high level of technical knowledge, but

the conclusion also defies common sense. In the District Court's view, ordinary consumers like Appellant have the responsibility to draw technical conclusions about the potential consequences from the vehicle's front grill design. But to expect an ordinary consumer, in making a motor vehicle purchase, to behave like a qualified engineering expert simply does not comport with human experience. Appellant should not be punished for behaving like any other ordinary consumer in assuming that the vehicle the manufacturer has rolled out for sale has been rigorously tested, and that, if there was a problem that arose during testing or when they were on the road, the manufacturer would disclose that condition.

But this Court need not expressly reject the District Court's flawed assumptions to reverse the decision below. Instead, the judgment should be reversed simply because the lower court should not have weighed the credibility of Appellant's evidence against other evidence (which include the District Court's own assumptions about consumer behavior). Under the Federal Rules, the District Court should have evaluated the substantial evidence in the record — including declarations, deposition testimony, and documentation

regarding the purchase and repair of Appellant's vehicle, all supporting Appellant's contention that he did not know about the Inlet Defect until the symptoms manifested and the vehicle was taken to repair on March 28, 2017 — and simply determined that this evidence demonstrates that a genuine issue of material fact exists regarding whether the Inlet Defect could have been discovered earlier. Accordingly, the District Court's order granting summary judgment simply cannot be affirmed on this record.

The Federal Rules of Civil Procedure expressly hold that the forms of evidence that Appellant submitted can be used to oppose a motion for summary judgment. Fed. R. Civ. P. 56(c)(1)(A). And this Court (and others) have held that such forms of evidence are competent means of opposing a summary judgment motion. *See, e.g.*, *Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259* (11th Cir. 2004) (listing forms of evidence that can be used); *Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1160–61* (11th Cir. 2012) (holding that a plaintiff declaration standing alone can be used alone to defeat a summary judgment motion); *Orr v. Bank of America, NT & SA, 285 F.3d 764, 777–78* (9th Cir. 2002) (holding that declarations can be used

as evidence).

Indeed, the Federal Rules require that such evidence be believed even if the district court wished to view the facts differently. *Strickland*, 692 F.3d at 1160–61; *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); s*ee McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009). The Eleventh Circuit dealt extensively with the sufficiency of evidence question and the weight of a plaintiff's testimony in *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012). As this Court explained, a district court cannot determine, on summary judgment "that some evidence is more compelling than other evidence. Our case law makes no such distinction; nor do the Federal Rules of Evidence assign different weight to different types of evidence." *Id.* at 1160–61. As the *Strickland* Court went on to emphasize: "While some testimony may be subject to credibility determinations [at trial], such credibility determinations are for the fact finder, which in this case is the jury [and not the district court]." *Id.* This Court concluded that the district court's decision to "weigh competing evidence" to reach its factual conclusions merited reversal. *Id.*

In *Strickland* and other contexts, this Circuit has held that a plaintiff's testimony, standing alone, is enough to defeat summary judgment. *Strickland,* 692 F.3d at 1160–61 ("Our case law recognizes that, even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."); *United States v. Stein,* 881 F.3d 853, 857 (11th Cir. 2018) ("A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated."); *see United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres,* 904 F.2d 487, 491–92 & fn. 3 (9th Cir. 1990) (testimony by a single declarant, such as Appellant, should have been sufficient to create a triable issue as to a material fact).

Here, Appellant specifically testified that he did not, and could not, have discovered the inlet defect at the time of purchase and he did discover the Inlet Defect on March 28, 2017, when his vehicle malfunctioned and was diagnosed by the Mercedes-Benz dealership. That evidence is sufficient to establish a genuine issue of material fact regarding whether the Inlet Defect should have been discovered earlier. Accordingly, the District Court's order granting MBUSA's

38

summary judgment must be reversed.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reverse the District Court's order granting MBUSA's summary judgment motion.

Dated: June 5, 2025                    Respectfully submitted,

                                       Capstone Law APC


By: _____
     Ryan H. Wu
     Tyler Anderson
     Attorneys for Plaintiff-Appellant
     HAGOP HADJIAN

## <u>CERTIFICATES OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Federal Rules of Appellate Procedure 32(a)(7)(B) because this brief contains 6,191 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f).

I certify that this brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook.

I further certify that a virus detection scan was performed on this electronic brief/file using Microsoft Defendant Antivirus, and that no virus was detected.

Dated: June 5, 2025

By:_____

    Ryan H. Wu
    Tyler Anderson
    Attorneys for Plaintiff-Appellant
    HAGOP HADJIAN

40

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the

foregoing **APPELLANT'S OPENING BRIEF** to all counsel of

record via the Court's CM/ECF system.

This 5th day of June  2025.


/s/ *Stacy Winberg*
Stacy Winberg